McIlvaine, J.
On the 26th of December, 1863, at Chattanooga, Tenn., the relator, John Shafer, and twenty-seven. *604 -others, having re-enlisted as veteran volunteers, under a call by the President of the United States for volunteers • during the late rebellion, were mustered into the service .as privates in company E of the 38th regiment of Ohio Voiunteer Infantry. The muster and descriptive roll imports to show the place of residence of each member of ■this detachment, as follows : “ Town, Royal Oak ; county, unknown; state, Ohioand it does not otherwise show that these enlistments were credited to any military district. The state was subdivided into military districts, composed -of counties, townships, cities, wards, and election districts. Royal Oak was not a military district, but the name of a post-office in Brown township, Paulding county, Ohio.
The testimony, however, shows that these twenty-eight veteran volunteers were afterward, by the adjutant-general of Ohio, credited to Washington township, Paulding ■county. And it also appears that the credit thus made was recognized by the several departments of the state and national governments, so that the quota assigned to Washington township, under each subsequent call for soldiers, was satisfied by the credit so given. Thus, the whole number of credits, including the above-named twenty-eight which stood to the credit of Washington township, .against its quota under the several calls made in 1864, was thirty-eight. The quota of that townshija under the calls •of February 1, 1864, and March 14, 1864 — the former for ■500,000, and the latter for 200,000 men — was seventeen, ■leaving a surplus of credits of twenty-one. Its quota, under the call of July 19, 1864, for 500,000 men, was fifteen, which, deducted from the surplus above named, left •six credits still standing. On the 21st of December, 1864, .another call for 300,000, men was made, in which it was -ordered that “ in case the quota, or any part thereof, of any town, township, ward of a city, precinct, or election district, or of any county not so subdivided, shall not be filled before the 15th day of February, 1865, then a draft shall be made to fill such quota, or any part thereof, under this •call, which may be unfilled on said 15th day of February, *605 1865.” The only evidence before us in relation to the-quota or credits of Washington township under this call, is-a return by Charles Kent, captain and provost-marshal, Tenth District of Ohio, dated January 31,1865, certified to-us by the secretary of war of the United States, showing-the quota to be O. From this we infer that the surplus ■ of credits last above named was sufficient to satisfy the quota from that township under that call.
By an act of the general assembly, passed April 13,1865,. entitled “ an act to provide a bounty for veteran volunteers ” (62 Ohio L. 141), it was provided in the first section that trustees of townships be authorized to issue to ■ each re-enlisted veteran volunteer, who had been heretofore credited upon the quota of such township, under any requisition of the President of the United States for volunteers dui’ing the late rebellion, and who had not received . any local bounty upon his re-enlistment, a bond ¡for $100, with interest, redeemable at the pleasure of the trustees after one year.
This section was amended on the 6th of April, 1866 (63 Ohio L. 188), so as to extend its provisions, and require ■ commissioners of counties, trustees of townships, and city councils to issue such bond to each veteran volunteer who • had been credited upon the quota of the county, township,. or city; and the original section one was thereby repealed.
Said section was again amended on the 7th of March,. 1867 (64 Ohio L. 35), so as to authorize and require such •bond to be issued to each re-enlisted veteran volunteer- “ who had theretofore been credited, as shown by the muster-' and descriptive roll, upon the quota of the county, township,. or city;” and it was also provided that “ where such reenlisted veteran volunteer had not been credited upon the • quota of any county, township, or city, but had been credited upon the quota of the state at large, or had been so - indefinitely credited as that the credit could only pass to the state, as shown by the muster and descriptive roll,” the ■ auditor -of state was required to issue a warrant for $100-* *606 upon the state treasury to such volunteer; and also, that in case a local bounty less than $100 had been paid to the volunteer, he should be entitled to a warrant or certificate for the difference. The section, as amended April 6, 1866, was also repealed by this act.
On the 16th of April, 1867, another act was passed entitled “ an act to authorize and require the payment of bounties to veteran volunteers” (64 Ohio L. 231), the first section of which is a substantial copy of the first section of the act of April 13, 1865, as amended March 7, 1867; and the 5th section provides, that “ the act ‘ to provide a bounty to veteran volunteers,’ passed April 13, 1865 (62 Ohio L. 147), and the act ‘to amend the act last named,’ passed April 6, 1866 (63 Ohio L. 188), and the act to .amend the last-named act, passed March 7,1867, are hereby repealed; provided, that the repeal thereof shall not affect .any rights acquired or liabilities incurred under said acts so repealed.”
On the 16th of May, 1868, another act was passed (65 Ohio L. 210), entitled “ an act to amend an act entitled an .act to amend an act to provide a bounty for veteran volunteers, passed March 7, 1867 (64 Ohio L. 35),” which re-enacts the provisions of the first section of the act of April 16, 1867 — the only change 'being, that the latter act adds to the number of volunteers who are entitled to a warrant on the state treasury, those who “from any mistake or informality shall not have been passed anywhere, or been credited at all, as shown upon the muster and descriptive rolls.” By this act the first section of the •act of March 7,1867, is again repealed, but the act of April 16, 1867, is not by any express terms affected. The last-named act of May 16, 1868, was undoubtedly intended as .an amendment to, and for the repeal of, the first section of the act of April 16, 1867. So understood, there would be no confusion either in the title or repealing clause of the act.
There has also been in force since the 19th of February, 1866 (S. & S. 1), another statute, which provides “ that *607 whenever a statute is repealed or amended, such repeal or ¡amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal; nor causes of such action, prosecution, or proceeding, existing at-the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act.”
Under the foregoing state of fact, and of statutory law, the question in this case is whether the relator is entitled to receive local bounty from the trustees of W ashington township.
The relator’s right to a bounty from Washington township is objected to, because the muster and descriptive roll does not show that he was credited to that township.
If his right to the bounty rested solely upon the act of May 16, 1868, it might be maintained that the state at large received the credit, and that the bounty should be paid out of the state treasury. We think, however, that the relator’s right to a bond from Washington township accrued to him under the act of Ajjril 18, 1865, and that such right still exists. We do not doubt that a right given by a statute is taken away by the repeal of the statute, unless the legislature otherwise declares.
It is true, the act of April 6, 1866, repealing the first section of the act of 1865, did not expressly save the relator’s right under the repealed section; nor did it expressly provide that his right should not be saved. Hence, his right to a bond from the township being a cause of action existing under the repealed statute, was not affected by the repeal, by virtue and force of the act of February 19,1866 ■(S. & S. 1). If, in answer to this, it be said that the exercise of the authority conferred on township trustees by the act of 1865, was at their discretion (which I do not admit), then I would reply that the duty to issue the bond was made absolute by the act of 1866, and the right acquired under that act, was not taken away by its repeal on the 7th of March, 1867, for the same reason.
It is claimed, however, that the rule of the later statutes *608 requiring the bond to be issued by the trustees, only where-the credit is shown to have been given upon the' muster and descriptive roll, relates only, to the evidence of the-right, and does not affect the right itself, and therefore the act of I ebruary 19, 1866, does not apply.
In this we must again differ with counsel. If the acts of 1865 and 1866 conferred upon veteran volunteers a right to a bounty from townships upon whose quotas they had in fact been credited, although not shown to have been so credited upon the muster and descriptive rolls, and the later-acts relieve_the townships from the obligation to pay bounty,, except in cases where the credit is shown to have been given, by the muster and descriptive rolls, we think the right of action would be taken away. Under the later statutes, it would be necessary to aver, as well as prove, that their credits were shown upon the muster and descriptive rolls.
But, aside from the act of February 19, 1866, the same-result would follow in this case from the proviso in the 5th section of the act of April 16, 1867.
It is true, the original first section of the act of April 13,. 1865, and the same section as amended April 6, 1866,-had been repealed previous to the act of April 16, 1867; but, notwithstanding those repeals and the consequent loss to the-relator of the right which had accrued to him under the-repealed sections,yet we think it was competent for the legislature to revive the right, as it certainly assumed to do,, by the proviso in the act of April 16,1867 — to wit, that the rights acquired and liabilities incurred under the repealed acts, should not be affected by their repeal. It appears to us that the intent was not only to save existing-rights under the repealed statutes, but also to revive any right which had accrued thereunder, although such right might have been affected by a former repeal of the same acts.
It is also claimed that Washington township should not be required to pay bounty to the relator, because: 1. The-adjutant-general of Ohio made a mistake in crediting the relator to that township, instead of Brown township, in which *609 Royal Oak was situated; 2. That he had no authority, under the law, to place credits anywhere, except as provided in the act of March 7,1867, and subsequent acts — to wit, to apportion among the counties of a congressional district the number of credits given to the congressional district.
In an action to enforce the rights of volunteers to local bounties, under the acts of 1865 or 1866, it is not material to show how, or by whom, the credits were placed. The conditions of the law are complied with, when it is shown that the subdistriets in fact received the credits upon their quotas.
It is also claimed that a right to the bounty does not arise under any of these statutes, unless there was an existing quota to be filled at the time the credit was given to the township. This claim is based on the idea that the statute requires the bond to issue as soon as the credit is given to the township. "We do not so understand the statute. The first of these statutes was passed only a few days before the close of the rebellion, and contemplated the payment of bounties in the future for credits that had been given in the past. And, as we understand, no bounty is required to be paid unless the quotas of the district had in fact been, credited with the enlistment.
The manifest intention of the legislature was to secure-to each re-enlisted veteran volunteer of the state a local bounty, and, at least in the earlier statutes, to impose the-burden of the bounty upon the locality that had received-, the credit and benefit of the re-enlistment.
The next objection made against the writ is, that the-whole number of credits assigned to this township was. not used in filling quotas under the different calls for volunteers; that is, that after all quotas of the township had; been filled, there was a surplus of six credits, and it is impossible to say that the relator was not one of the six who-were not credited upon any quota of the township.
As above stated, we think the surplus of six credits left,, after filling the quota under the call of July, 1864, waq; *610 applied on the quota of the township under the call of December, 1864, and if so, then there is no ground for this objection; but if the fact, in this regard, should be otherwise, still it is quite certain that all other credits, including twenty-one of the twenty-eight credits, of which the relator was one, were applied upon the quotas of this township, and it is also certain that the township has not issued a bond to any one of these twenty-eight volunteers, although confessedly it was benefited by the application of twenty-one of the number as credits upon its quotas. It is not necessary for us to state a rule for selecting, from the whole number, the proper recipients of the township bondsl It is enough to say that until the township has discharged its duty, by issuing bonds to the number that credits have been realized on its quotas, it has no right to refuse the demand of any one of those -volunteers who were placed to the credit of the township; and when the township shall have paid bounties to as many as have been credited upon its quotas, if there be a surplus of credits to the township, it is the plain duty of the auditor of state, under existing laws, to issue his warrant on the state treasury in favor of those volunteers who remain unpaid, and such only should be regarded as constituting the surplus.
It is suggested that there is no necessity, in order to give bounties to these twenty-eight volunteers, or to any of them, to burden this township with the payment, as, under the provisions of the act of 1868, the payment may be made iOut of the state treasury.
Ve do not think the legislature intended to impose the 'burden upon the state treasury in any case where the right was given to enforce the payment against the subdistrict benefited. And if, by a reasonable construction of the ■statutes, each subdistriet can be required to pay the bounty •t-o the extent it was benefited by a credit upon its quota, 'it would be unjust toward other subdistricts, which have made full payment to that extent, to adopt a strict construction of the acts, and thereby relieve one subdistrict *611 of its just proportion of the burden, and cast it upon others.

Peremptory writ awarded.

Day, O. J., Welch, White, and Rex, JJ., concurring.